UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANE DOE NO. 62, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | No. 1:16-cv-01480-JMS-DKL |
| ) | |
| INDIANA UNIVERSITY BLOOMINGTON, ) | |
| BETA ALPHA SHELTER OF DELTA TAU ) | |
| DELTA FRATERNITY, INC., ) | |
| DELTA TAU DELTA NATIONAL ) | |
| FRATERNITY, ) | |
| DELTA TAU DELTA BETA ALPHA ) | |
| CHAPTER, ) | |
| ) | |
| *Defendants*. | |

**ORDER ON MOTION TO DISMISS**

Plaintiff Jane Doe No. 62[1] ("Ms. Doe") has filed a Complaint against various Defendants, asserting claims stemming from a sexual assault perpetrated by an Indiana University student while Ms. Doe was at a party at the Delta Tau Delta fraternity house. [Filing No. 29.] Defendants Delta Tau Delta National Fraternity ("DTD National") and Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. ("DTD Shelter"), have filed a Motion to Dismiss Ms. Doe's claims against them. [Filing No. 33.] For the reasons that follow, the Court denies the pending Motion to Dismiss. [Filing No. 32.]

---

[1] The Court has granted Ms. Doe leave to proceed anonymously in this case because of the recognized public policy in favor of protecting the identity of victims of sexual assault. [Filing No. 31.]

## I.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### RELEVANT BACKGROUND

The relevant background is set forth from the allegations of Plaintiff's Amended Complaint, [Filing No. 29], which the Court must accept as true pursuant to the applicable standard of review at this stage of the proceedings. The Court emphasizes that these allegations are considered to be true only for purposes of deciding the pending motion.

Ms. Doe and John Enochs were both students at Indiana University Bloomington ("IU"). [Filing No. 29 at 3.] Mr. Enochs was a member of the Beta Alpha chapter of the Delta Tau Delta fraternity at IU (the "DTD Chapter").[2] [Filing No. 29 at 3.] DTD National is the controlling body that "owns, controls, operates, and provides policies and rules for the DTD Chapter." [Filing No. 29 at 3.] Members of the DTD Chapter live together in a fraternity house on IU's campus (the "House"). DTD Shelter is a non-profit corporation that "owns, manages, operates, and maintains the DTD House." [Filing No. 29 at 3.]

On or about October 2013, a female IU student the parties identify as M.S. alleged that she was sexually assaulted by Mr. Enochs at the House after Mr. Enochs supplied her with alcohol, despite M.S. being under the legal drinking age. [Filing No. 29 at 5.] M.S. reported the sexual assault to IU's police department. [Filing No. 29 at 5.]

DTD National and DTD Shelter were aware of the alleged assault by Mr. Enochs against M.S. [Filing No. 29 at 6.] DTD National was also aware of other sexual assaults at fraternity houses at IU and "multiple previous allegations of sexual assault specifically at the DTD Chapter." [Filing No. 29 at 4.] DTD National continued to allow the DTD Chapter to remain at IU and chose not to exercise its power to suspend or revoke the DTD Chapter's charter. [Filing No. 29 at 5.] Likewise, DTD Shelter chose not to exercise its power to remove members from the House, close it, or prohibit the DTD Chapter from throwing parties. [Filing No. 29 at 5.]

On April 11, 2015, Ms. Doe was at a party hosted by the DTD Chapter at the House. [Filing No. 29 at 7.] Although she was under the legal drinking age, she was encouraged to drink large amounts of alcohol. [Filing No. 29 at 7.] DTD National and DTD Shelter were aware that

---

[2] IU and the DTD Chapter are also Defendants to Ms. Doe's action, [Filing No. 29 at 3], but they have filed Answers to the Amended Complaint, [Filing No. 35; Filing No. 53], and are not parties to the pending Motion to Dismiss, [Filing No. 32].

members encouraged women to consume large amounts of alcohol at parties at the House. [Filing No. 29 at 7.] Despite M.S.'s prior accusation that Mr. Enochs had sexually assaulted her, DTD National "chose not to exercise its power to prevent the party from taking place or prevent Enochs from attending the party" where Ms. Doe was present. [Filing No. 29 at 8.] After drinking alcohol at the House, Ms. Doe "passed out and then awakened to Enochs sexually assaulting her in a room in the DTD House." [Filing No. 29 at 8.] As a result of the sexual assault, Ms. Doe has suffered and continues to suffer from physical, mental, and emotional anguish. [Filing No. 29 at 8.]

On June 16, 2016, Ms. Doe filed a lawsuit in this Court. [Filing No. 1.] In relevant part for purposes of the pending motion, Ms. Doe's operative Complaint asserts negligence claims against DTD National regarding its allegedly negligent "retention and supervision" of Mr. Enochs and the DTD Chapter and a premises liability claim against DTD Shelter.[3] [Filing No. 29 at 11-16.] DTD National and DTD Shelter have moved to dismiss these claims, [Filing No. 32], and Ms. Doe opposes that motion, [Filing No. 37]. The Court will now address the issues the parties raise in the pending motion.

### III.
### DISCUSSION

The parties dispute whether DTD National and DTD Shelter owed Ms. Doe a duty to protect her from the alleged criminal acts of Mr. Enochs. [Filing No. 33 at 4-10.] They also dispute whether DTD Shelter could be liable to Ms. Doe on a premises liability theory. [Filing No. 33 at 10-12.] As the parties recognize in their briefs, Indiana law applies to Ms. Doe's claims against these Defendants. The Court will separately address Ms. Doe's claims against each party.

---

[3] Ms. Doe asserts a federal question claim against IU, [Filing No. 29 at 8-9], which gives the Court subject matter jurisdiction over this action, but the Court is exercising supplemental jurisdiction over Ms. Doe's claims against DTD National and DTD Shelter pursuant to 28 U.S.C. § 1367.

4

### A. DTD National

DTD National argues that Ms. Doe has failed to plead sufficient facts to demonstrate that it had a duty to protect her from Mr. Enoch's alleged criminal acts. [Filing No. 33 at 4-10.] It argues that there is no recognized legal duty under these circumstances and that it had no special relationship with Ms. Doe. [Filing No. 33 at 5-6.] DTD National argues that even if Mr. Enoch's act was foreseeable, foreseeability alone is not enough. [Filing No. 33 at 6.] DTD National cites Indiana Supreme Court precedent that it contends forecloses the duty element of Ms. Doe's negligent supervision claim against it. [Filing No. 33 at 6-7 (citing *Yost v. Wabash College*, 3 N.E.3d 509 (Ind. 2014)).] It also cites various cases that it contends show that "a national office [of] a fraternity owes no duty of care with respect to activities occurring at a local chapter when the national office has no day-to-day control over the local chapter or its members." [Filing No. 33 at 7-9.]

In response, Ms. Doe contends that DTD National only moved to dismiss her negligent supervision claim but omitted any reference to her negligent retention claim, in which she alleges that DTD National should have revoked Mr. Enoch's membership and the DTD Chapter's charter. [Filing No. 37 at 2-3.] She contends that its ability to take those actions put DTD National in a special relationship to her and gave rise to a duty to protect her from foreseeable harm by Mr. Enochs and the DTD Chapter. [Filing No. 37 at 4.] Ms. Doe emphasizes that the cases cited by DTD National in support of its arguments were all decided at the summary judgment stage after full discovery regarding the extent of the relationship between the national fraternity and local chapter at issue. [Filing No. 37 at 5.] Ms. Doe asks the Court to deny DTD National's request to dismiss her claims because she contends she sufficiently alleged that it owed her a duty of care to

5

prevent the foreseeable sexual assault based on its authority to control Mr. Enochs and the DTD Chapter. [Filing No. 37 at 8.]

In reply, DTD National contends that Ms. Doe relies on legal conclusions regarding her alleged special relationship with the parties to support her claim. [Filing No. 43 at 1-2.] It again argues that Indiana Supreme Court precedent forecloses Ms. Doe's claim. [Filing No. 43 at 2.] DTD National contends that it moved for summary judgment on all of Ms. Doe's negligence-based claims against it, pointing out that even a negligent retention claim fails because claims of that nature can only succeed in the context of an employer-employee relationship. [Filing No. 43 at 3.]

DTD National heavily relies on various Indiana Supreme Court cases finding in favor of a national fraternity on summary judgment for an injury that occurred at a local chapter. In *Yost*, a fraternity pledge brought negligence claims against the national fraternity, among others, for injuries he sustained during an alleged hazing incident. 3 N.E.3d at 513. The Indiana Supreme Court held that "[a]bsent the existence of a legally recognized duty, there can be no negligence or resulting liability." *Id.* at 520. The determination of duty is generally an issue of law, and the applicable test balances three factors: 1) the relationship between the parties; 2) the reasonable foreseeability of harm to the person injured, and 3) public policy concerns. *Id.* at 520-21 (citing *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991)). After detailing the evidence presented on summary judgment, the Indiana Supreme Court has concluded that a national fraternity "lacked any direct oversight and control of the individual fraternity members" and "the national fraternity had no general duty to [the pledge] upon which [his] negligence action could be based." *Yost*, 3 N.E.3d at 521; *see also Smith v. Delta Tau Delta*, 9 N.E.3d 154 (Ind. 2014) (affirming summary judgment in favor of national fraternity after concluding that there was "no evidence that the

6

national fraternity assumed any duty of preventative, direct supervision and control of the behaviors of its local chapter members" and, thus, "did not have a duty to insure the safety of the freshman pledges at the local fraternity"); *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 975 (Ind. 1999) (holding on summary judgment that based on the evidence of record, a national fraternity had not assumed a duty to protect a guest of the local fraternity from sexual assault).

While the cases cited by DTD National may carry the day for it on summary judgment, today is not that day. In all of those cases, the Indiana Supreme Court found in favor of a national fraternity after extensively detailing the evidence the parties presented of the national fraternity's control over the local chapter and its members, ultimately finding the evidence in each case insufficient to create a duty for purposes of each plaintiff's negligence claim. *Smith*, 9 N.E.3d at 161-63; *Yost*, 3 N.E.3d at 521-22; *Johnson*, 712 N.E.2d at 975.[4] At the motion to dismiss stage of the proceedings, however, the Court must accept Ms. Doe's well-pleaded allegations as true. *Active Disposal*, 635 F.3d at 886. Ms. Doe alleges that DTD National was aware of a prior sexual assault allegation involving Mr. Enochs at the House and that it took no responsive action. [Filing No. 29 at 6.] The Court cannot say that Ms. Doe's negligence claims against DTD National fail as a matter of law such that they can be dismissed at this time. *See Manning v. Miller*, 355 F.3d 1028, 1031 (7th Cir. 2004) (emphasizing that a motion to dismiss "should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his

---

[4] DTD National emphasizes that the local DTD Chapter at IU was at issue in *Johnson*, [Filing No. 33 at 9], but the Court disagrees with DTD National's implication that *Johnson* automatically precludes Ms. Doe's claim in this action. The sexual assault in *Johnson* occurred approximately 25 years before Ms. Doe's sexual assault, and it is certainly possible that the relationship between DTD National and the DTD Chapter has evolved since that time in a manner that affects Ms. Doe's claims. Moreover, the facts of Ms. Doe's case are materially different, given that she alleges that she was sexually assaulted by a DTD fraternity member who had previously assaulted another woman and that DTD National was aware of the prior assault. [Filing No. 29 at 5-8.]

claim which would entitle him to relief"). Given that the Indiana Supreme Court's conclusions on which DTD National relies occurred on summary judgment and relied on the results of discovery obtained in those cases, the Court denies DTD National's request to dismiss Ms. Doe's negligence-based claims against it.[5]

### B. DTD Shelter

DTD Shelter argues that Ms. Doe has failed to plead sufficient facts to demonstrate that it had a duty to protect her from the alleged criminal acts of Mr. Enochs. [Filing No. 33 at 4-10.] DTD Shelter contends that Ms. Doe summarily concludes that she was an invitee at the House and erroneously bases her legal arguments on that assumption. [Filing No. 33 at 10.] DTD Shelter also argues that it did not owe a duty to Ms. Doe because it was merely the lessor of the House and "has turned control of the properly over to a lessee (here, DTD Chapter and its members)." [Filing No. 33 at 11.] Because it contends that Ms. Doe has not made the requisite factual allegations to plausibly support a finding that DTD Shelter controlled the premises for purposes of owing her a duty of care, DTD Shelter asks that the claim against it be dismissed. [Filing No. 33 at 12.]

In response, Ms. Doe argues that she sufficiently alleges that DTD Shelter was in a position to take reasonable precautions to protect her from a foreseeable criminal act and that it failed to do so. [Filing No. 37 at 9.] She emphasizes that while DTD Shelter argues in its brief that it was a lessor of the property that turned over full control to the DTD Chapter and its members, that is not

---

[5] The Court finds Ms. Doe's argument that DTD National moved to dismiss her negligent supervision claim but not her negligent retention claim to be a non-starter. [Filing No. 37 at 2-3.] DTD National moved to dismiss the negligence-based claims against it, [Filing No. 33 at 4-10], arguing that Ms. Doe could not prove that it owed her a duty as a matter of law. Given that the Court has rejected that argument at this stage of the litigation, it need not further address the specifics of the claims.

alleged in the Amended Complaint and actually contradicts allegations in the Amended Complaint, which must be taken as true at this time. [Filing No. 37 at 9.] Ms. Doe also opposes DTD Shelter's argument that she has not sufficiently alleged that she was an invitee on the property. [Filing No. 37 at 9-10.]

In reply, DTD Shelter argues that many of Ms. Doe's allegations are actually legal conclusions that need not be taken as true at this time. [Filing No. 43 at 1.] DTD Shelter argues that if any entity owed Ms. Doe a duty, it was the DTD Chapter because the DTD Chapter had exclusive possession of the premises at issue. [Filing No. 43 at 3-4.]

In the context of a premises liability claim against a landowner after an injury at a fraternity, the Indiana Supreme Court held on summary judgment that "[a] landowner owes to an invitee or social guest a duty to exercise reasonable care for his protection while he is on the landowner's premises." *Yost*, 3 N.E.3d at 515 (citation omitted). Specifically, "landowners have a duty to take reasonable precautions to prevent foreseeable criminal acts against invitees." *Id.* When the landowner is a lessor and the lessee "is in operational control of the premises," however, such duty rarely exists. *Id.* "A landlord under many circumstances has no liability to tenants or others for injuries on the property when the tenant is in full control of the leased premises." *Id.* In other words, "in the absence of statute, covenant, fraud or concealment, a landlord who gives a tenant full control and possession of the leased property will not be liable for personal injuries sustained by the tenant or other persons lawfully upon the leased property." *Id.* at 515-16.

The Court rejects DTD Shelter's argument that Ms. Doe has not sufficiently alleged that she was an invitee at the House. Ms. Doe specifically alleges that she was "a guest at a social event at the DTD House," [Filing No. 29 at 14], and this is sufficient, *see Rogers v. Martin*, --- N.E.3d ---, 2016 WL 6287651, at *5 (Ind. 2016) ("social guests qualify as invitees").

9

The Court also rejects DTD Shelter's argument that it owes no duty to Ms. Doe as a matter of law because DTD Shelter claims it was the lessor of the property and the DTD Chapter had full control. While this may be true, and DTD Shelter may prevail on this argument on summary judgment, Ms. Doe's Amended Complaint does not allege that DTD Shelter is the lessor of the House or that DTD Shelter turned full control of it over to the DTD Chapter or its members. [Filing No. 29.] To the contrary, Ms. Doe specifically alleges that DTD Shelter "owns, manages, operates, and maintains" the House, [Filing No. 29 at 3], and she further alleges that DTD Shelter had the power to remove members, close the House, and prohibit parties at the House, but that it "chose not to exercise its power" to do so, [Filing No. 29 at 5].

DTD Shelter relies on Indiana precedent to support its argument that it owed no duty to Ms. Doe, but the cases it cites were decided on summary judgment. *See Yost*, 3 N.E.3d at 516 ("Wabash, as the party moving for summary judgment, established that it was the lessor, and the local fraternity as tenant thus had the exclusive right to possess and control the premises. Yost, as the non-moving party, failed to respond by designating any evidence to dispute this fact."); *see also Yost*, 3 N.E.3d at 524-25 (Rucker, J., concurring in part and dissenting in part) ("But the mere fact that the local fraternity leased the premises does not *ipso facto* establish that Wabash gave the local fraternity 'full control and possession of the leased property.' The question is whether the terms of the lease reflect such an arrangement."); *Olds v. Noel*, 857 N.E.2d 1041, 1046 (Ind. Ct. App. 2006) (analyzing the evidence presented on summary judgment regarding whether a landlord "transferred full control and possession" to the tenant before determining whether duty existed). Because discovery has not yet occurred in this case and the Court must take Ms. Doe's factual allegations as true at this stage of the litigation, the Court denies DTD Shelter's request to dismiss Ms. Doe's premises liability claim against it. *See Manning*, 355 F.3d at 1031 (emphasizing that a

motion to dismiss "should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

## IV.
### CONCLUSION

For the reasons stated herein, the Court **DENIES** the Motion to Dismiss filed by DTD National and DTD Shelter. [Filing No. 32.]

Date: 12/12/2016

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Electronic Distribution to Counsel of Record via CM/ECF:**

Brian R. Drummy
BUNGER & ROBERTSON
bdrummy@lawbr.com

Mary Anne Pelic
BUNGER & ROBERTSON
mpelic@lawbr.com

Thomas B. Bleich
COKINOS BOSIEN YOUNG
tbleich@cbylaw.com

James B. Ewbank, II
COKINOS BOSIEN YOUNG
jewbank@cbylaw.com

Arick W. Fudali
HERMAN LAW
afudali@hermanlaw.com

N. Thomas Connally, III
HOGAN LOVELLS U.S. LLP
tom.connally@hoganlovells.com

Erin Thornton Escoffery
TAFT STETTINIUS & HOLLISTER LLP
eescoffery@taftlaw.com

Michael C. Terrell
TAFT STETTINIUS & HOLLISTER LLP
mterrell@taftlaw.com