UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JANE DOE NO. 62, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-01480-JMS-DML |
| | ) | |
| DELTA TAU DELTA BETA ALPHA CHAPTER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This case arises out of an alleged sexual assault that occurred in a college fraternity house during a fraternity-sponsored event. In 2015, plaintiff Jane Doe alleged that John Enochs, a member of the Beta Alpha chapter of the Delta Tau Delta fraternity ("DTD") sexually assaulted her. Mr. Enochs was charged with sexual assault, and he ultimately pled guilty to a charge of battery. Ms. Doe raises four claims of negligence against this local DTD chapter, alleging that DTD had a duty to protect her from sexual assault while a guest at the fraternity. Presently pending before the Court is DTD's Motion for Summary Judgment on Ms. Doe's claims. [Filing No. 121.] For the reasons described below, the Court **GRANTS IN PART** and **DENIES IN PART** DTD's Motion. The Court also **CERTIFIES** several questions to the Indiana Supreme Court.

## I.
### BACKGROUND

In October 2013, M.S.[1] was a sophomore at Indiana University and a member of the Delta Zeta ("DZ") sorority. [Filing No. 121-1 at 3.] At that time, Mr. Enochs was a sophomore and a member of DTD. [Filing No. at 121-7 at 2.] M.S. and Mr. Enochs were set up to attend a fall

---

[1] The Court identifies this individual by her initials, as do the parties, because her identity is not at issue in this case.

"barn dance" together, and they, along with a number of other individuals, socialized together at the DTD and DZ houses on the evening of the dance. [Filing No. 121-1 at 4; Filing No. 121-7 at 2-4.] At some point while at the DTD house, M.S. "blacked out," and she has no memory of the events that occurred between that point and when she woke up later that evening. [Filing No. 121-1 at 6.] Over the course of the next several days, M.S. came to believe that she may have been sexually assaulted by Mr. Enochs while she was blacked out or possibly unconscious, and she communicated her concerns to several friends. [Filing No. 121-1 at 7-8.] Within a few days of the incident, M.S. either told close friend Brook Clodfelter that she had been sexually assaulted, or told Ms. Clodfelter details of the incident that led Ms. Clodfelter to believe that M.S. had been sexually assaulted. [Filing No. 137-4; Filing No. 137-5.] Ms. Clodfelter attests that within a few weeks of the alleged assault, she told DTD fraternity members Jake Demetros, Sam Sanders, Garrett Johnson, and Cael Kiess about the allegations.[2] [Filing No. 137-4; Filing No. 137-5.] M.S. also testified within several weeks of the alleged assault, she believed that Mr. Kiess and Mr. Sanders were aware of the allegations, based upon communications that those individuals had with her about Mr. Enochs. [Filing No. 121-1 at 10-11.]

Approximately eighteen months later, Ms. Doe was a sophomore at Indiana University. [Filing No. 121-15 at 3.] On April 11, 2015, Ms. Doe visited the DTD fraternity house with friends to attend an afternoon event hosted in the house's courtyard. [Filing No. 121-14 at 8-9.] Prior to arriving at that event, Ms. Doe consumed approximately six shots of alcohol with friends in her dorm room. [Filing No. 121-15 at 8.] According to Ms. Doe, a bar was set up in the courtyard of

_____

[2] Mr. Keiss, Mr. Demetros, and Mr. Sanders testified that Ms. Clodfelter did not tell them about the sexual assault allegations. [Filing No. 121-5 at 4 (deposition testimony of Mr. Kiess); Filing No. 121-8 at 4-7 (deposition testimony of Mr. Demetros); Filing No. 121-10 at 3 (deposition testimony of Mr. Sanders).]

DTD, serving shots from small paper cups. [Filing No. 121-15 at 12.] While Ms. Doe did not drink any alcohol from the bar, she did drink from a "handle"[3] of alcohol that was being passed around the courtyard. [Filing No. 121-15 at 11.] At some point during the afternoon, Ms. Doe's friend Stephanie Paley observed Ms. Doe entering the house with Mr. Enochs. [Filing No. 121-17 at 9.] Ms. Paley later located Ms. Doe in a bathroom inside the house, upset and crying. [Filing No. 121-17 at 11.] Ms. Doe and her friends returned to Ms. Doe's dorm room, and Ms. Doe called the police to report that she had been sexually assaulted. [Filing No. 121-17 at 13; Filing No. 121-15 at 16.] Mr. Enochs was charged with sexual assault, [Filing No. 121-19], and ultimately pled guilty to a charge of battery, [Filing No. 121-7 at 13-14].

The Delta Tau Delta fraternity maintains a code of conduct for its members. That code includes ten statements regarding conduct that it states members "must adhere to," and it includes an oath that states, "[o]n my solemn Oath, I will abide by this code of conduct and will confront members of this Fraternity who are in violation." [Filing No. 137-18 at 1.] Among those obligations, members are asked to agree that they "will respect the dignity of all persons and therefore, [they] will not…sexually abuse any human being," and "[they] will not abuse or support the abuse of alcohol." [Filing No. 137-18 at 1.]

Ms. Doe filed the operative Amended Complaint here alleging claims against several defendants arising from that assault. [Filing No. 29.] The only claims that remain for resolution are those against DTD alleging: (1) negligent retention and supervision; (2) negligence arising from premises liability; (3) general negligence; and (4) negligence arising from willful, wanton,

---

[3] The term "handle" is slang for a half gallon or 1.75 liters of liquor. Bottles this size are made with a handle. *See* https://en.wikipedia.org/wiki/Alcohol_measurements (last accessed April 17, 2018).

and reckless misconduct.  [Filing No. 29.]  Presently pending before the Court is DTD's Motion for Summary Judgment, which is ripe for the Court's review.  [Filing No. 121.]

## II.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

### III.
#### DISCUSSION

Sitting in diversity, this Court's duty "is to decide issues of Indiana state law" by predicting how "the Indiana Supreme Court would decide them today." *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). As such, this Court must "ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Golden v. State Farm Mut. Auto. Ins. Co.*, 745 F.3d 252, 255 (7th Cir. 2014) (citations omitted).

For over a century, Indiana courts have set forth the elements of actionable negligence, and although the precise language has changed, the basic test has not. *See, e.g.*, *Faris v. Hoberg*, 134

Ind. 269 (1893); *see also Neal v. Home Builders, Inc.*, 232 Ind. 160 (1953); *Harris v. Indiana Gen. Serv. Co.*, 206 Ind. 351 (1934). The "essential elements" for a negligence action in Indiana are "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014) (citations omitted). It is well settled that duty is a legal question for the court. *Polet v. ESG Sec., Inc.*, 66 N.E.3d 972, 978 (Ind. Ct. App. 2016); *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992) ("Whether a defendant owes a duty to a plaintiff is a question of law.").

Ms. Doe raises negligence claims under four different theories: (1) negligent retention and supervision; (2) negligence arising from premises liability; (3) general negligence; and (4) negligence arising from willful, wanton, and reckless misconduct. [Filing No. 29.] DTD moves for summary judgment on all of those claims. [Filing No. 121.] The Court reorders and addresses each in turn.

**A. Negligence: Premises Liability**

Ms. Doe alleges that she was an invitee of DTD at the time of the assault, and under a theory of premises liability, DTD owed her a duty of care that was breached. [Filing No. 29 at 17.] DTD moves for summary judgment on this claim, contending that the harm suffered by Ms. Doe was not foreseeable, and therefore that DTD owed Ms. Doe no duty of care. [Filing No. 122 at 18-25.]

*1. Legal Standard: Duty to an Invitee*

The parties appear to agree that Ms. Doe was a social invitee of DTD, and under longstanding Indiana law, the possessor of a premises owes an invitee a duty to exercise reasonable care for the invitee's protection. *Rogers v. Martin*, 63 N.E.3d 316, 321 (Ind. 2016); *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 387 (Ind. 2016). But, as the Indiana Supreme

Court noted in *Rogers* regarding that duty, "inconsistencies in Indiana case law have generated confusion over this issue." *Rogers*, 63 N.E.3d at 321. In recent companion cases *Rogers* and *Goodwin*, the Indiana Supreme Court comprehensively examined "how the landowner-invitee duty has progressed over time," in an effort to provide "a workable framework for the future." *Id. at 321*; *see also Goodwin*, 62 N.E.3d at 387. The resulting framework distinguishes between the duty to an invitee "in cases involving injuries due to *conditions of* the land," and those involving injuries "due to *activities on* a landowner's premises unrelated to the premises' condition." *Rogers*, 63 N.E.3d at 323 (emphasis in original).

This Court has recently had the opportunity to address a case involving conditions on the land under Indiana law, *Sturgis v. Silvers,* 2017 WL 4922734 (S.D. Ind. Oct. 31, 2017), but the parties agree, as does the Court, that this case involves only activities on the land. In order to determine the precise duty owed when activities on the land are involved, "foreseeability is the critical inquiry in determining whether the landowner's duty of reasonable care extends to the particular circumstances at issue." *Rogers*, 63 N.E.3d at 323. But, as the *Rogers* court explained, "[l]andowner-invitee cases involving dangerous activities on the premises have been inconsistent in addressing how foreseeability relates to duty." *Id.* at 325-26; *see also Goodwin*, 62 N.E.3d at 390.

Prior to *Goodwin* and *Rogers*, the cases addressing foreseeability in this context generally employed one of two approaches. Some courts applied a "totality of the circumstances" test to evaluate whether a particular event was foreseeable. *Rogers*, 63 N.E.3d at 325 (citing *Kroger Co. v. Plonski*, 930 N.E. 2d 1, 7 (Ind. 2010); *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 972-73 (Ind. 1999)). Under the totality of the circumstances analysis, a court considers "all of the

circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents." *Rogers*, 63 N.E.3d at 325 (citing *Plonski,* 930 N.E.2d at 7).

Courts applying the other approach have focused on foreseeability's role in the overall negligence analysis. Those courts have pointed out that foreseeability is also a component of proximate cause, which is the last of the three elements in a negligence claim. Therefore, as the analysis goes, determining foreseeability in the duty context must differ somehow from determining foreseeability in the proximate cause context; if not, the foreseeability analysis in the proximate cause context would be superfluous. Those courts have generally concluded that the foreseeability analysis regarding duty involves a less "fact-specific" inquiry than is required in the proximate cause context. *See Goodwin*, 62 N.E.3d at 390-91 ("If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause.") (internal quotation and citation omitted). Applying this approach, "a consideration of the specific facts of the case [is] unnecessary because foreseeability with respect to duty require[s] only a 'general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.'" *Rogers*, 63 N.E.3d at 325 (quoting *Barnard v. Menard, Inc.,* 25 N.E.3d 750 (Ind. Ct. App. 2015)).

The Indiana Supreme Court in *Goodwin* and *Rogers* sought to remedy this split in authority. Faced with the two divergent approaches, the court adopted the latter. The court concluded that, as it applies to duty, "foreseeability is a general threshold determination that involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm. In other words, this foreseeability analysis should focus on the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected—without addressing the

specific facts of the occurrence." *Rogers*, 63 N.E.3d at 325 (internal quotation and citations omitted). The court noted that it believed that this "analysis comports with the idea that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." *Id.*

### 2. Prior Notice to DTD – Factual Allegations

DTD argues that under the standard articulated in *Goodwin* and *Rogers*, Ms. Doe's injury was not foreseeable as a matter of law, and DTD owed no duty to Ms. Doe. [Filing No. 122 at 23-25.] Ms. Doe responds that the harm she suffered was foreseeable to DTD, first and foremost because DTD had actual notice of allegations that Mr. Enochs had sexually assaulted another woman at a prior fraternity-sorority event. [Filing No. 29 at 18.] In reply, DTD argues that it was not on notice of any prior allegations of sexual assault, and that Ms. Doe has provided no admissible evidence supporting an inference that members of DTD had knowledge of any such allegations. [Filing No. 143 at 5.]

The Court begins with the issue of notice. In a declaration dated October 17, 2017, Ms. Clodfelter attests that on or about October 12, 2013, she "became aware that M.S. had allegedly been sexually assaulted by [Mr.] Enochs." [Filing No. 137-5 at 1.] She further attests that within approximately two weeks of the alleged sexual assault, she "had discussions with Jake Demetros and fellow DTD members Sam Sanders, Garrett Johnson, and Cael Keiss [sic] about M.S.'s allegation that she was sexually assaulted by [Mr.] Enochs. Our discussions specifically concerned [Mr.] Enochs having sex with M.S. while she was unconscious and that she had alleged sexual assault against him." [Filing No. 137-5 at 2.] And in a deposition conducted on November 8, 2017, Ms. Clodfelter testified to the same facts. [Filing No. 137-4 at 2-3.]

DTD argues that these statements do not provide factual support for Ms. Doe's allegation that DTD had notice of allegations of a prior sexual assault, because: (1) some of Ms. Clodfelter's statements are contradictory; (2) at least some of the DTD members identified by Ms. Clodfelter testified that they were never informed of any sexual assault allegations; and (3) Ms. Clodfelter's statements constitute hearsay, and are therefore inadmissible. [Filing No. 143 at 5-7.]

The Court begins by reminding DTD that at the summary judgment stage of the proceedings, the Court does not balance or weigh evidence, and it does not make determinations regarding a witness's credibility. *O'Leary*, 657 F.3d at 630. As to DTD's first argument, regarding inconsistent testimony, the Court does not necessarily agree with DTD's assessment of Ms. Clodfelter's testimony as being contradictory. But even if some inconsistencies exist, the result is not for the Court to disregard the testimony in its entirety. Ms. Clodfelter clearly testified and attested that she told four DTD members that she believed that Mr. Enochs had sexually assaulted M.S. [*See, e.g.,* Filing No. 137-4; Filing No. 137-5.] This constitutes admissible evidence in support of the allegation that DTD had notice of a prior sexual assault by M.r Enochs.

As to DTD's second argument that at least some of the DTD members identified by Ms. Clodfelter testified that they were never informed of any sexual assault allegations, the Court need not belabor its analysis. The DTD members' testimony creates a genuine dispute of material fact as to whether they were informed of the sexual assault allegations. It does not negate Ms. Clodfelter's testimony on summary judgment, and it does not create an entitlement to a grant of summary judgment.

And lastly, the Court rejects DTD's argument that Ms. Clodfelter's testimony constitutes inadmissible hearsay. A hearsay statement is an out of court statement introduced to prove the truth of the matter asserted. Fed. R. Evid. 801(c); *see also, United States v. James*, 487 F.3d 518,

524 (7th Cir. 2007) ("An out of court statement is hearsay when it is offered to prove the truth of the matter asserted.").  Here, DTD appears to allege that several types of statements constitute hearsay: Ms. Clodfelter's statements that she believed that M.S. was sexually assaulted by Mr. Enochs, and that M.S. told Ms. Clodfelter that she had been sexually assaulted by Mr. Enochs. These statements do not constitute hearsay in this instance, because they are not being offered to prove the truth of the matter asserted.  (In other words, they are not being offered to prove either that M.S. *actually was* sexually assaulted, whether Ms. Clodfelter *actually believed* that M.S. had been sexually assaulted, or what Ms. Clodfelter was told about the sexual assault—the truth of those underlying statements is irrelevant.)  Instead, they are being offered to prove what several *DTD members* were told—*i.e.*, whether they were on notice of sexual assault allegations against Mr. Enochs.  Therefore, they are not hearsay and are admissible for that purpose. *See, e.g., James,* 487 F.3d at 524 ("We have held that statements offered to provide context for other admissible statements are not themselves hearsay because they are not offered to prove the truth of the matter asserted.  We also have suggested that informants' statements offered to explain why authorities targeted a particular defendant and to dispel an accusation of improper motive would not be offered to "prove the truth of the matter asserted," and thus would not constitute hearsay.") (some internal citations omitted) (citing *United States v. Silva,* 380 F.3d 1018, 1020 (7th Cir. 2004) (noting that testimony regarding an informant's tip could be relevant to demonstrating why the Government targeted the defendant rather than the truth of the tip itself, but that no such argument had been advanced in that case)).

The Court therefore concludes that the evidence proffered by Ms. Doe is properly before the Court and that Ms. Doe has sufficiently alleged at the summary judgment stage that the

fraternity had actual notice prior to Ms. Doe's assault that a female student alleged that Mr. Enochs had sexually assaulted her at a fraternity-sorority event.[4]

### 3. Application of Rogers and Goodwin

The Court must therefore determine under the standard articulated by the Indiana Supreme Court in *Rogers* and *Goodwin* whether the harm suffered by Ms. Doe was foreseeable to DTD, and whether they owed her a duty of care.

Ms. Doe argues that DTD's actual knowledge is determinative here. She contends that if DTD indeed had notice of prior allegations of sexual assault, then the harm she suffered was foreseeable, and DTD clearly had a duty to protect Ms. Doe from the actions of Mr. Enochs. *Rogers* and *Goodwin* are the most recent statements of law on the issue of duty in the context of premises liability, and the Court turns first to those decisions. *Rogers* and *Goodwin* make clear that courts may not apply a "totality of the circumstances" approach to determine whether a particular harm was foreseeable, and instead must consider "the broad type of plaintiff" and "the broad type of harm" involved. *Rogers*, 63 N.E.3d at 325. As this Court reads those cases, however, it is not clear what role prior notice (or perhaps more specifically the defendant's actual knowledge) plays in the analysis. A recent case from the Indiana Court of Appeals underscores to this Court the open questions left by *Rogers* and *Goodwin*, and the Court provides a brief discussion of those cases in order to illustrate the obstacle this Court faces in attempting to define the parameters of Indiana law.

---

[4] In its reply brief, DTD references in passing that the allegedly informed fraternity members were not officers. DTD does not argue, however, that notice to officers of the fraternity is required under Indiana law, or that notice to members alone is *per se* insufficient. [*See* Filing No. 143 at 7.] As this Court has repeatedly counseled, "perfunctory and undeveloped arguments are waived." *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016).

In *Goodwin*, the plaintiffs were seated at a table in a bar, socializing with friends. *Goodwin*, 92 N.E.3d at 385. A customer at another table believed he overheard one of the plaintiffs make a derogatory comment about that customer's wife. *Id.* Without warning, that customer produced a handgun and shot at the offending plaintiff, striking him and the two other plaintiffs at the table. *Id.* Applying the non-fact specific analysis described above, the Supreme Court concluded that the broad type of plaintiff in this case was a patron of a bar, and the harm suffered was "the probability or likelihood of a criminal attack, namely: a shooting inside a bar." *Id.* at 393. The court reasoned that "although bars can often set the stage for rowdy behavior, we do not believe that bar owners routinely contemplate that one bar patron might suddenly shoot another." *Id.* at 393-94. Therefore, the court held that "a shooting inside a neighborhood bar is not foreseeable as a matter of law." *Id.* at 394.

In *Rogers*, defendants Angela Martin and Brian Brothers co-hosted a house party at Martin's house. *Rogers*, 63 N.E.3d at 318. Toward the end of the party, after Martin had gone to bed, Brothers became involved in a fistfight with guests Paul Michalik and Jerry Chambers. *Id.* at 318-19. Brothers immediately informed Martin about the fight and asked her to help him convince Michalik and Chambers to leave. *Id.* at 319. Martin entered her basement and saw Michalik lying on the floor with his eyes closed. *Id.* Martin assumed Michalik was passed out from intoxication, and she went back to her room. *Id.* Chambers and Brothers carried Michalik upstairs, and soon after, police arrived and found Michalik dead in Martin's yard. *Id.* Michalik's estate brought a negligence claim against Martin, claiming that she breached her duty to protect him from foreseeable harm. *Id.* Here, the Supreme Court stated that this factual scenario raised two questions regarding duty: one being whether Martin owed Michalik a duty to protect him from the

harm that occurred during the fistfight, and the other being whether Martin owed Michalik a duty to protect him from an exacerbation of injuries. *Id.* at 326.

As to the first question, the court defined the general class of plaintiff as a "house-party guest," and the harm as a fight that injured a house-party guest. *Id.* The court concluded that no duty existed in that circumstance, because "[a]lthough house parties can often set the stage for raucous behavior, we do not believe that hosts of parties routinely physically fight guests whom they have invited." *Id.* Therefore, the court stated that it was not "reasonably foreseeable for a homeowner to expect this general harm to befall a house-party guest" and that "to require a homeowner to take precautions to avoid this unpredictable situation would essentially make the homeowner an insurer for all social guests' safety." *Id.* But as to the second situation, the court defined that general class of plaintiff as a house-party guest who is injured on the premises, and the harm as the exacerbation of the injuries suffered by that guest. *Id.* at 327. In these circumstances, the court held that a homeowner has a duty to render assistance to an injured guest, and that reasonable persons would recognize and agree that a homeowner had a duty under those circumstances. *Id.*

Within that backdrop, the Court arrives at the most recent case applying the *Goodwin* and *Rogers* rules regarding foreseeability and duty. *See Hamilton v. Steak 'n Shake Operations, Inc.*, 92 N.E.3d 1166 (Ind. Ct. App. March 7, 2018). In *Hamilton*, plaintiff Amber Hamilton was a patron of a Steak 'n Shake restaurant, along with her brother Dustyn and two friends. *Id.* at 1167. A verbal altercation began between Hamilton's group and another group of patrons seated ten to twenty feet away, when a member of the second group, Ricky Jackson, began to threaten and verbally abuse Dustyn on account of his sexual orientation. *Id.* Over the course of thirty minutes, the altercation escalated to the point that Jackson blocked the door such that no one could leave

and pounded on the windows of the restaurant, taunting Dustyn to fight. *Id.* All of the employees who were present at the restaurant were aware of the conflict and nature of the exchange, but no one took any action to intervene, including calling Steak 'n Shake's security agency or the police. *Id.* at 1167-68. Ultimately, the two groups made their way to the cash register, where the confrontation continued to intensify. *Id.* at 1168. At that point, the acting manager stated several times, "Hey, you guys got to stop it and leave." *Id.* Moments later, a physical altercation ensued between Jackson and Dustyn. *Id.* When Hamilton entered the fray, Jackson pulled out a gun and shot her in the face, causing her serious injuries. *Id.*

Hamilton filed a complaint alleging negligence against Steak 'n Shake, and the trial court granted summary judgment for Steak 'n Shake. *Id.* It concluded that, under *Rogers* and *Goodwin*, the broad type of plaintiff involved was a patron of a restaurant, and the broad type of harm was a criminal act of a third party. *Id.* at 1173. The trial court determined that the result in *Goodwin* controlled the outcome, and that the criminal act was not foreseeable as a matter of law. *Id.*

The Court of Appeals reversed the grant of summary judgment. Conducting a thorough application of *Goodwin* and *Rogers* to the facts at hand, the court concluded that the trial court's determination (and the position advocated by Steak 'n Shake) applied too narrow a reading of those cases. The Court of Appeals emphasized that Steak 'n Shake's employees had actual notice of the escalating confrontation and the attendant risk to its invitees. *Id.* at 1173. It pointed out that while *Goodwin* concluded that a shooting inside a neighborhood bar is not foreseeable, that statement "followed the Court's conclusion that bar owners do not routinely contemplate that one bar patron might *suddenly* shoot another." *Id.* at 1173 (internal quotation omitted) (emphasis in original). The *Hamilton* court highlighted that the bar employees in *Goodwin* did not know or have reason to know that the third party would commit a shooting, since it happened suddenly and

without warning. *Id.* In *Hamilton*, however, the possessor of the premises had actual and real-time knowledge of the escalating conflict and threats of violence. *Id.*

The *Hamilton* court also highlighted the second scenario presented in *Rogers*, for which the Supreme Court concluded that a duty existed. In that instance in *Rogers*, "the Court redefined the broad type of plaintiff and harm in terms of the landowner's knowledge that a house-party guest had been injured. The *Rogers* Court concluded that the landowner's knowledge that the house-party guest had been injured gave rise to a duty to take precautions to protect the injured guest from exacerbation of those injuries." *Id.* Applying the *Rogers* framework, the *Hamilton* court defined the broad type of plaintiff as "a restaurant patron who has been subjected to escalating threats and taunts" and the broad type of harm as "injury resulting after the encounter culminated in physical violence." *Id.* at 1173-74 ("Steak 'n Shake did not have to know the precise harm that would befall its customer, only that there was some probability or likelihood that one of its patrons could be harmed and that the potential harm was serious enough that a reasonable person would have been induced to take precautions to avoid it.") The *Hamilton* court concluded that, similarly to Martin's knowledge of an invitee's injury in *Rogers*, "Steak 'n Shake's knowledge of the events taking place on its premises gave rise to a duty to take reasonable steps to provide for patron safety." *Id.* at 1173.

This Court finds compelling the Court of Appeals' analysis in *Hamilton*. In particular, the Court is sensitive to the Court of Appeals' observation that accepting the definitions of the broad type of plaintiff and harm articulated by the trial court and advocated by Steak 'n Shake—a restaurant patron and a criminal act by a third party—would "essentially extend immunity to proprietors for any harm to a patron resulting from acts of a third party, criminal or otherwise, regardless of the circumstances." *Id.* at 1173 fn. 6. That result would appear inconsistent with

both the principles of premises liability under Indiana law and with the analysis in *Rogers* and *Goodwin*—if the Indiana Supreme Court intended to create a regime of non-liability for the acts of third parties, it could have done so.

On April 13, 2018, Steak 'n Shake, however, filed a petition to transfer the case to the Indiana Supreme Court, where the central issue is likely to be how to define the general class of plaintiff and the general type of harm—in other words, whether the defendant's actual knowledge may be considered as part of the analysis. Given the recent vintage of the Indiana Supreme Court precedent on the determination of foreseeability in the context of duty, the open issues that appear to exist regarding its application, and the posture of a state court case raising precisely the same question, this Court is not in the best position to decide this issue of Indiana state law.

Moreover, even if a defendant's actual knowledge or prior notice may not be considered as part of the analysis, it is unclear to this Court how the Indiana Supreme Court would decide the question of foreseeability in this instance. The facts in *Delta Tau Delta* appear the most analogous to the facts at issue here—indeed if the application of law to the facts in that case controlled, the Court would conclude that DTD owed Ms. Doe a duty. In that case, the Indiana Supreme Court held that the same DTD chapter owed a duty to protect a female social invitee from a sexual assault committed by a fraternity alumnus at a fraternity-sponsored event. *Delta Tau Delta*, 712 N.E.2d at 973-74. In the course of its analysis, the Supreme Court noted that "[a]mongst other information, DTD was made aware that 1 in 4 college women have either been raped or suffered attempted rape," that "the group most likely to commit gang rape on the college campus was the fraternity," and that "fraternities at seven universities had recently experienced legal action taken against them for rape and/or sexual assault." *Delta Tau Delta*, 712 N.E.2d at 973-74. This case was abrogated, at least in part, by *Rogers* and *Goodwin*, although the extent of that abrogation is

not entirely clear to this Court. *See, e.g., Goodwin*, 62 N.E.3d at 394 (citing *Delta Tau Delta* approvingly for the proposition that "to impose a blanket duty on proprietors to afford protection to their patrons would make proprietors insurers of their patrons' safety which is contrary to the public policy of this state"). The Court has no reason to conclude that fraternities, or the specific chapter at issue here, are today any less aware of the frequency or seriousness of sexual assault committed on college campuses, or in fraternity houses.

As this Court would define the inquiry in this case, the general class of plaintiff is "female social invitee," and the general type of harm is "sexual assault." The Court provides this definition, however, mindful of the fact that under the standard articulated in *Goodwin* and *Rogers*, the framing of the class of plaintiff and type of harm can be outcome determinative on the question of duty—as the Court of Appeals' reversal in *Hamilton* illustrates. There are, of course, multiple ways in which the plaintiff and harm here could be defined, again excluding for the moment the question of actual notice. For example, is the plaintiff a social invitee or a female social invitee? Is the type of harm a criminal act, a criminal battery, or a sexual assault, or one of those injuries specifically during a fraternity sponsored event? And what is the impact of alcohol being provided by the fraternity, or being consumed in meaningful quantity by the invitee prior to arriving at the fraternity? Employing the definition as formulated above, and even using its best predictive powers, it is not clear to this Court what the Indiana Supreme Court would conclude as to whether a fraternity chapter owes a duty to a female social invitee to protect her from sexual assault by a member against whom an accusation of sexual assault had previously been made.

The Court could decide these issues in the first instance, but doing so would deprive the Indiana Supreme Court of the opportunity to address these legal questions in light of the relatively new and unexplored precedent presented by *Rogers* and *Goodwin*. Rule 64 of the Indiana Rules

of Appellate Procedure permits a federal district court to certify a question of Indiana law to the Indiana Supreme Court "when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent." Certification is appropriate "when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). The Court concludes that certification is appropriate here, and it hereby certifies the following questions to the Indiana Supreme Court:

- Under the standard articulated in *Rogers and Goodwin*, may a court consider the actual knowledge of a defendant in determining the foreseeability of an event in the context of a duty analysis? If so, does it properly do so by framing either the class of plaintiff or the harm in terms of that knowledge?

- Under Indiana law, does a fraternity owe a duty to a female social invitee to protect her from sexual assault by a member of the fraternity during a fraternity-sponsored event?

- Does the analysis change where there is evidence that prior to the event some fraternity members were told by a third party that the fraternity member had on an earlier occasion sexually assaulted a female?

- Is the analysis impacted by evidence that the female social invitee may have been under the influence of alcohol, most of which was consumed off premises, at the time of the sexual assault?

If the Indiana Supreme Court accepts any of the questions that this Court certifies in this order, it can, of course, reword the questions as it sees fit. *See Green v. Ford Motor Co.,* 942 N.E.2d 791, 796 (Ind. 2011) (revising and restating certified question).

In light of this certification, the Court **DENIES** DTD's Motion for Summary Judgment as to this claim, but **WITHOUT PREJUDICE** to further argument following review by the Indiana Supreme Court.

### B. General Negligence and Willful, Wanton, and Reckless Misconduct

The parties contend, and the Court accepts, that the same standard articulated as to the foreseeability element of the premises liability claim applies to Ms. Doe's general negligence and willful, wanton, and reckless misconduct claims.

Therefore, in light of the certification, the Court **DENIES** DTD's Motion for Summary Judgment as to these claims, but **WITHOUT PREJUDICE** to further argument following review by the Indiana Supreme Court.

### C. Negligent Retention and Supervision

DTD argues that Ms. Doe's claim for negligent retention and supervision fails because Indiana law recognizes such a duty only in the context of an employment relationship—that is, of the employer to the employee, or the "master" to the "servant". [Filing No. 122 at 15.] DTD contends that this employer-employee relationship does not apply in the context of a fraternity chapter and fraternity members. [Filing No. 122 at 15-16.] But, DTD argues, even if such a general duty did exist as to this type of relationship, Ms. Doe cannot show that the harm she suffered was foreseeable to DTD, as required by the legal standard. [Filing No. 122 at 16-18.] Ms. Doe responds that the fraternity chapter-member relationship is analogous to the employer-employee relationship, and therefore that a claim for negligent retention and supervision in this

context is cognizable.  [Filing No. 137 at 15.]  And Ms. Doe contends that under that duty, DTD failed to exercise reasonable care as to Ms. Doe.  [Filing No. 137 at 16-17.]

Indiana law recognizes, under certain circumstances, that an employer can owe a duty of care to a person harmed by that employer's employee.  *Clark v. Aris, Inc.*, 890 N.E.2d 760, 763 (Ind. Ct. App. 2008).  In order to determine whether a duty is imposed, a court "must determine if the employer exercised reasonable care in hiring and retaining the employee."  *Id.*  The Indiana Court of Appeals has indicated that, to answer this inquiry, courts apply the test described in the Restatement (Second) of Torts, Section 317, applying to the "master-servant" relationship.  *Id.* The touchstone of that test is control.  *See* Restatement (Second) of Torts, Section 317 (indicating that under certain circumstances a "master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others…").  As for negligent retention of a servant, "the master may subject himself to liability under the rule stated in this Section by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others." Restatement (Second) of Torts, Section 317, comment c; *see also Konkle v. Henson,* 672 N.E.2d 450, 454 n. 4 (Ind. Ct. App. 1996) (quoting section 317 and comment c).

Ms. Doe does not cite, and the Court has not located, any Indiana case concluding that a negligent retention and supervision claim could apply outside of the employment or master-servant context.  Instead, Ms. Doe relies on the Indiana Supreme Court's opinion in *Yost v. Wabash College*, 3 N.E.3d 509 (Ind. 2014).  In that case, the court denied the summary judgment motion of a local fraternity chapter on the basis that, viewing the evidence in the light most favorable to the non-moving party, the local chapter may have voluntarily assumed a specific duty of care as to the plaintiff.  As the court described it, the plaintiff's argument was "not that a conventionally

recognized duty (such as a landowner's duty to an invitee or common carrier's duty to a passenger) existed, but rather that the local fraternity assumed a duty requiring the local fraternity to act with reasonable care." *Yost*, 3 N.E.3d at 523. The court concluded that "[t]he undisputed designated evidence does not preclude the possibility that [plaintiff] may show at trial that the local fraternity undertook to render supervisory services intended to reduce the risk of harm to members like [plaintiff], that upon which supervision [plaintiff] relied, and further that by failing to exercise reasonable care the local fraternity increased the risk of harm to [plaintiff]." *Id.* (citing Restatement (Third) of Torts, Section 42 (Physical and Emotional Harm)).

The *Yost* case, and the arguments regarding an assumption of duty raised by Ms. Doe, are simply inapposite as to Ms. Doe's negligent supervision and retention claim. Arguments regarding a voluntary assumption of a duty are more properly characterized as relevant to either Ms. Doe's general negligence or her willful, wanton, and reckless misconduct claims.

Finding no legal basis upon which to extend an employer-employee duty to the context of a fraternity chapter and its members, the Court **GRANTS** DTD's Motion for Summary Judgment as to this claim.

## IV.
### CONCLUSION

For the reasons described above, the Court **GRANTS IN PART** and **DENIES IN PART** DTD's Motion for Summary Judgment. [121]

The Court **GRANTS** DTD's Motion as to Ms. Doe's claim for negligent supervision and retention.

The Court **CERTIFIES** the questions listed above to the Indiana Supreme Court by separate entry pursuant to Indiana Appellate Rule 64. Accordingly, DTD's Motion for Summary Judgment as to the claims for premises liability (negligence), general negligence, and willful,

wanton, and reckless misconduct is **DENIED**, but **WITHOUT PREJUDICE** to further argument

following review by the Indiana Supreme Court.


Date: 4/17/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana


Distribution:

Thomas B. Bleich
COKINOS BOSIEN YOUNG
tbleich@cbylaw.com

N. Thomas Connally, III
HOGAN LOVELLS U.S. LLP
tom.connally@hoganlovells.com

Brian R. Drummy
BUNGER & ROBERTSON
bdrummy@lawbr.com

Erin Thornton Escoffery
TAFT STETTINIUS & HOLLISTER LLP
eescoffery@taftlaw.com

James B. Ewbank, II
COKINOS BOSIEN YOUNG
jewbank@cbylaw.com

Arick W. Fudali
HERMAN LAW
afudali@hermanlaw.com

Stephanie J. Gold
HOGAN LOVELLS U.S. LLP
stephanie.gold@hoganlovells.com

Krisel McSweeney
HERMAN LAW
kmcsweeney@hermanlaw.com

Mary Anne Pelic
BUNGER & ROBERTSON
mpelic@lawbr.com

Michael C. Terrell
TAFT STETTINIUS & HOLLISTER LLP
mterrell@taftlaw.com

Copy by U.S. Mail to:
Clerk of the Supreme Court
216 State House
200 West Washington Street
Indianapolis, IN 46204