UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANE DOE NO. 62, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:16-cv-01480-JMS-DML |
| | ) |
| DELTA TAU DELTA BETA ALPHA CHAPTER, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This case arises out of an alleged sexual assault that occurred in a college fraternity house during a fraternity-sponsored event. Plaintiff Jane Doe raised four claims of negligence against the Beta Alpha chapter of the Delta Tau Delta fraternity ("DTD"), alleging that DTD breached its duty to protect her from sexual assault while she was a guest at the fraternity house. DTD filed a Motion for Summary Judgment on all of Ms. Doe's claims, and in an Order issued on April 18, 2018, the Court granted DTD's Motion as to one of her claims. As to the remaining claims, the Court certified several relevant questions to the Indiana Supreme Court and denied the remainder of DTD's Motion, without prejudice to further argument following the Indiana Supreme Court's decision. The Indiana Supreme Court denied consideration of the certified questions, and following further briefing, the remaining claims are ripe for resolution. For the reasons described below, the Court denies DTD's Motion for Summary Judgment as to those claims.

## I.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear,

whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d

903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

In October 2013, M.S.[1] was a sophomore at Indiana University and a member of the Delta Zeta ("DZ") sorority. [Filing No. 121-1 at 3.] At that time, John Enochs was a sophomore and a member of DTD. [Filing No. at 121-7 at 2.] M.S. and Mr. Enochs were set up to attend a fall "barn dance" together, and they, along with Erika Twer and a number of other individuals, socialized together at the DTD and DZ houses on the evening of the dance. [Filing No. 121-1 at 4; Filing No. 121-7 at 2-4.] At some point while at the DTD house, M.S. "blacked out," and she

---

[1] The Court identifies this individual by her initials, as do the parties, because her identity is not at issue in this case.

has no memory of the events that occurred between that point and when she woke up later that evening. [Filing No. 121-1 at 6.] After less than an hour at the DTD house, M.S., Mr. Enochs, Ms. Twer, and several other individuals walked to the DZ house. [Filing No. 121-6 at 3.] Ultimately, M.S. and Mr. Enochs ended up in M.S.'s room together. [Filing No. 121-6 at 3-4.] After coming to M.S.'s room to see if M.S. was ready to leave, through the window Ms. Twer saw Mr. Enochs having sex with M.S., who appeared to be "dead weight" and "asleep." [Filing No. 121-6 at 4.] M.S. has no memory of this event. [Filing No. 121-2 at 8-11.]

Over the course of the next several days, M.S. came to believe that she may have been sexually assaulted by Mr. Enochs while she was blacked out or possibly unconscious, and she communicated her concerns to several friends. [Filing No. 121-1 at 7-8.] Within a few days of the incident, M.S. either told close friend Brook Clodfelter that she had been sexually assaulted, or told Ms. Clodfelter details of the incident which led Ms. Clodfelter to believe that M.S. had been sexually assaulted. [Filing No. 137-4; Filing No. 137-5.] Within a few weeks of the alleged assault, Ms. Clodfelter told DTD fraternity members Jake Demetros, Sam Sanders, Garrett Johnson, and Cael Kiess about the allegations.[2] [Filing No. 137-4; Filing No. 137-5.] M.S. believed that shortly after the alleged assault, Mr. Kiess and Mr. Sanders were aware of the allegations, based upon communications that those individuals had with her about Mr. Enochs. [Filing No. 121-1 at 10-11.]

---

[2] Mr. Kiess, Mr. Demetros, and Mr. Sanders testified that Ms. Clodfelter did not tell them about the sexual assault allegations. [Filing No. 121-5 at 4 (deposition testimony of Mr. Kiess); Filing No. 121-8 at 4-7 (deposition testimony of Mr. Demetros); Filing No. 121-10 at 3 (deposition testimony of Mr. Sanders)], but the Court is required to credit Ms. Clodfelter at the summary judgment phase.

Approximately eighteen months later, Ms. Doe was a sophomore at Indiana University. [Filing No. 121-15 at 3.] On April 11, 2015, Ms. Doe visited the DTD fraternity house with friends to attend an afternoon event hosted in the house's courtyard. [Filing No. 121-14 at 8-9.] Mr. Kiess, Mr. Demetros, and Mr. Sanders were all at that time members of DTD and present at the fraternity house for the event. [Filing No. 121-5 at 5 (deposition of Mr. Kiess); Filing No. 121-8 at 5 (deposition of Mr. Demetros); Filing No. 121-10 at 4 (deposition of Mr. Sanders).] Prior to arriving at the DTD event, Ms. Doe consumed approximately six shots of alcohol with friends in her dorm room. [Filing No. 121-15 at 8.] A bar was set up in the courtyard of DTD, serving shots from small paper cups. [Filing No. 121-15 at 12.] While Ms. Doe did not drink any alcohol from the bar, she did drink from a "handle"[3] of alcohol that was being passed around the courtyard. [Filing No. 121-15 at 11.] At some point during the afternoon, Ms. Doe's friend Stephanie Paley observed Ms. Doe entering the house with Mr. Enochs. [Filing No. 121-17 at 9.] Ms. Paley later located Ms. Doe in a bathroom inside the house, upset and crying. [Filing No. 121-17 at 11.] Ms. Doe and her friends returned to Ms. Doe's dorm room, and Ms. Doe called the police to report that she had been sexually assaulted. [Filing No. 121-17 at 13; Filing No. 121-15 at 16.] Mr. Enochs was charged with sexual assault, [Filing No. 121-19], and ultimately pled guilty to a charge of battery, [Filing No. 121-7 at 13-14].

The Delta Tau Delta fraternity maintains a code of conduct for its members. That code includes ten statements regarding conduct that it states members "must adhere to," and it includes an oath that states, "[o]n my solemn Oath, I will abide by this code of conduct and will confront members of this Fraternity who are in violation." [Filing No. 137-18 at 1.] Among those

---

[3] The term "handle" is slang for a half gallon or 1.75 liters of liquor. Bottles this size are frequently made with a handle. *See* https://en.wikipedia.org/wiki/Alcohol_measurements (last accessed April 17, 2018).

5

obligations, members are asked to agree that they "will respect the dignity of all persons and therefore, [they] will not…sexually abuse any human being," and "will not abuse or support the abuse of alcohol." [[Filing No. 137-18 at 1](#).]

Ms. Doe filed the operative Amended Complaint alleging claims against several defendants arising from that assault. [[Filing No. 29](#).] DTD filed a Motion for Summary Judgment on all of Ms. Doe's claims, [[Filing No. 121](#)], which this Court first addressed in an Order dated April 18, 2018, [[Filing No. 148](#)]. The Court granted DTD's Motion as to Ms. Doe's negligent retention and supervision claim. [[Filing No. 148 at 22](#).] As to Ms. Doe's premises liability, general negligence, and willful, wanton, and reckless misconduct claims, the Court determined that it was appropriate to certify several questions to the Indiana Supreme Court, and it did so in an order dated the same day. [[Filing No. 148 at 22](#); [Filing No. 149](#).] Accordingly, the Court denied DTD's Motion as to those claims, but without prejudice to further argument following the Indiana Supreme Court's decision. [[Filing No. 148 at 22-23](#).]

In an order dated June 1, 2018, the Indiana Supreme Court declined to consider those certified questions. [[Filing No. 154 at 2](#).] This Court then invited the parties to submit additional briefing as to the issues remaining for resolution, particularly in light of several recent Indiana Court of Appeals cases. [[Filing No. 155](#).] The parties have submitted that briefing, and the remainder of DTD's Motion for Summary Judgment is ripe for resolution.

### III.
#### DISCUSSION

**A. Negligence Claims: Duty and Foreseeability**

As the Court described in its April 18 Order, the parties appear to agree that Ms. Doe was a social invitee of DTD. Under longstanding Indiana law, the possessor of a premises owes an invitee a duty to exercise reasonable care for the invitee's protection. *[Rogers v. Martin](#)*, 63 N.E.3d

316, 321 (Ind. 2016); *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 387 (Ind. 2016). In recent companion cases *Rogers* and *Goodwin*, the Indiana Supreme Court comprehensively examined "how the landowner-invitee duty has progressed over time," in an effort to provide "a workable framework for the future." *Rogers,* 63 N.E.3d at 321; *see also Goodwin*, 62 N.E.3d at 387. The resulting framework distinguishes between the duty to an invitee "in cases involving injuries due to *conditions of* the land," and those involving injuries "due to *activities on* a landowner's premises unrelated to the premises' condition." *Rogers*, 63 N.E.3d at 323 (emphasis in original).

In order to determine the precise duty owed when activities on the land are involved, "foreseeability is the critical inquiry in determining whether the landowner's duty of reasonable care extends to the particular circumstances at issue." *Rogers*, 63 N.E.3d at 323. As it applies to duty, "foreseeability is a general threshold determination that involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm." *Id.* at 325. In other words, "this foreseeability analysis should focus on the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected—without addressing the specific facts of the occurrence." *Id.* (internal quotation and citations omitted). The Indiana Supreme Court has noted that this "analysis comports with the idea that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." *Id.*

Ms. Doe contends that the harm she suffered was foreseeable to DTD, first and foremost because DTD, through several of its members, was aware of allegations that Mr. Enochs had sexually assaulted another woman at a prior fraternity-sorority event. [Filing No. 29 at 18; Filing No. 156 at 5-6.] Citing several recent Indiana Court of Appeals opinions, Ms. Doe argues that the foreseeability analysis under *Rogers* and *Goodwin* takes into consideration DTD's knowledge, and

7

that she has provided factual evidence in support of a finding that DTD had knowledge of the prior sexual assault allegations. [Filing No. 156 at 3-6 (citing *Hamilton v. Steak 'n Shake Operations, Inc.*, 92 N.E.3d 1166 (Ind. Ct. App. March 7, 2018) and *Certa v. Steak 'n Shake Operations, Inc.*, 2018 WL 2407594 (Ind. Ct. App. May 29, 2018))*.]

DTD acknowledges that under the Court of Appeals' application of *Goodwin* and *Rogers*, a defendant's actual knowledge does play a role in the foreseeability analysis. [Filing No. 157 at 3.] It argues that Ms. Doe's assault was not foreseeable, however, because (1) "DTD did not have actual knowledge or reason to believe a criminal assault would occur on April 11, 2015"; and (2) knowledge of assault allegations made 18 months prior to the assault alleged by Ms. Doe is irrelevant, because it does not constitute contemporaneous knowledge of a current threat. [Filing No. 157 at 7-10.]

The Court agrees with the parties that, under the *Goodwin*/*Rogers* framework, and particularly as applied in subsequent cases by the Indiana Court of Appeals, a defendant's actual knowledge is an appropriate consideration in determining foreseeability and the existence of any duty owed. In *Hamilton*, where defendant Steak 'n Shake was aware of a series of escalating threats between its customers, the court incorporated the defendant's knowledge into its definition of the broad type of plaintiff and harm, defining "the broad type of plaintiff [as] a restaurant patron who has been subjected to escalating threats and taunts and the broad type of harm [as] injury resulting after the encounter culminated in physical violence." *Hamilton*, 92 N.E.3d at 1173. In *Certa*, also involving an altercation between patrons of a Steak 'n Shake restaurant, the court defined the broad type of plaintiff as a "restaurant patron" and the broad type of harm as "injury caused by a third party." *Certa*, 2018 WL 2407594, at *4. It then addressed foreseeability separately, concluding that Steak 'n Shake was aware of a series of escalating threats, and that

8

"[g]iven these circumstances, [the court] conclude[s] that Steak 'n Shake's knowledge of the events on its premises in this case gave rise to a duty to take reasonable steps to provide for [the plaintiff's] safety as a patron of its establishment." *Id.* While the *Hamilton* and *Certa* courts framed their analyses slightly differently—one incorporating the defendant's knowledge into the definitions of the plaintiff and type of harm, and the other considering the defendant's knowledge as a second step—the result was the same: the defendant's knowledge was a relevant consideration in determining the existence of a duty.

In this instance, considering the "broad type of plaintiff" and the "broad type of harm," as well as the defendant's knowledge, the Court concludes that the duty implicated here can be described as follows: the broad type of plaintiff is an invitee to a social fraternity event, and the broad type of harm is sexual assault by a member previously alleged to have committed sexual assault, where the fraternity knew or should have known of the prior allegations. While the Court concludes that a duty arises from the facts viewed in the light most favorable to Ms. Doe, the Court acknowledges that there is a genuine dispute of material fact as to whether any prior allegations of sexual assault were made, and if so, whether DTD knew or should have known about them. DTD argues that even if it did have knowledge of the prior sexual assault allegations, those allegations were either too attenuated or too stale to constitute knowledge relevant to this particular incident. But this Court declines to determine as a matter of law that information received eighteen months prior to an incident is *per se* insufficient to constitute relevant knowledge, particularly when the information is an allegation of sexual assault.

This approach is consistent with the Indiana Supreme Court's observation that "courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." *Rogers*, 63 N.E.3d at 325. It also comports with the Indiana Model Civil Jury Instructions'

9

expressions of the elements and burden of proof for premises liability claims. Should this case proceed to trial, in order to prove negligence in the premises liability context, Ms. Doe must prove each of the following by the greater weight of the evidence:

> (1) DTD was the occupant of property;
> (2) Ms. Doe was an invitee on the property occupied by DTD;
> (3) Ms. Doe was injured as a result of a sexual assault by a DTD member on the property; and
> (4) DTD
>     (a) knew or should have known that allegations of a prior sexual assault had been made against the member; and
>     (b) failed to use reasonable care to protect the invitee against the danger posed by the member.

*See* Indiana Model Civil Jury Instructions, 1-1900 §§ 1931, 1932.

For all of these reasons, the Court cannot conclude at this stage that DTD owed Ms. Doe no duty of care, and DTD is not entitled to summary judgment on this issue.[4]

### B. Willful, Wanton, and Reckless Misconduct Claim

DTD also moves for summary judgment on Ms. Doe's willful, wanton, and reckless misconduct claim. It raises only one argument in support of that Motion—the same one it raised as to duty in the context of the premises liability and general negligence claims. [Filing No. 122 at 25.] And both parties appear to agree that the same analysis applies.

DTD raises no other basis for a grant of summary judgment, so the Court denies its Motion as to this claim, for the same reasons addressed above. The Court notes, however, that the parameters of Ms. Doe's claim are not entirely clear to the Court—particularly whether it is a negligence claim, or more properly construed as a variety of intentional tort. The Court will, of course, determine the applicable law in developing appropriate jury instructions as to this claim.

---

[4] DTD states that its sole argument as to Ms. Doe's general negligence claim "is the same as" the duty argument discussed above. [Filing No. 122 at 25.] Therefore, the Court's conclusions apply equally to that claim.

**C. Breach**

In its original brief in support of summary judgment, DTD argues that even if DTD owed Ms. Doe a duty of care, Ms. Doe cannot prove breach. [Filing No. 122 at 25-27.] The Court addresses this argument succinctly, as DTD's cursory treatment provides no basis upon which a grant of summary judgment could be made. Aside from its statement of the legal standard, DTD provides three sentences in support of its contention that Ms. Doe cannot prove a breach of duty, and it provides no citation to any part of the factual record. As described above, the Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. DTD simply states that Ms. Doe's "alleged facts remain unproven." [Filing No. 122 at 26.] DTD, however, misstates Ms. Doe's burden at the summary judgment stage: she need not "prove" every claim in her Complaint. She must instead provide factual support for her allegations, sufficient to create a genuine dispute of material fact. That she has done.

For all of these reasons, the Court concludes that summary judgment is not appropriate, and it denies DTD's Motion. [Filing No. 121.]

**IV.**
**CONCLUSION**

A social fraternity owes a duty of care to its invitees to protect them from sexual assault by a fraternity member previously alleged to have committed sexual assault, where the fraternity knew or should have known of the prior allegations. The Court **DENIES** DTD's Motion for Summary Judgment [121] as to Ms. Doe's claims for premises liability, general negligence, and willful, wanton, and reckless misconduct.

The Court requests that the Magistrate Judge confer with the parties at her earliest convenience to discuss a possible agreed resolution of this matter.

Date: 7/11/2018

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**